**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

JAMES E. WASHINGTON, doing business as Sales Pointe Realty,

Plaintiff,

vs.

VENDORS RESOURCE MANAGEMENT, also known as VRMCO.com, et al.,

Defendants.

Case No. 3:19-cv-00402

District Judge Douglas R. Cole
Magistrate Judge Sharon L. Ovington

## REPORT AND RECOMMENDATIONS[1]

Plaintiff James E. Washington is a resident of Dayton, Ohio. Like his father before him, he is a real estate broker. His pro se Complaint identifies his claims as "Title VII 1964 Civil Rights Violations[,] Alleged Participation in Conspiracy to Commit Fraud against Plaintiff to Deny Plaintiff the Ability to Participate in Local REO Listing Sales Management, 'REO' Market[.]" (Doc. #1, *PageID* #1). He names as Defendants many entities and individuals involved in the sale of real estate in or near Dayton, Ohio.

Various Defendants (the Moving Defendants) presently seek dismissal of Washington's Complaint under Fed. R. Civ. P. 12(b)(6) or judgment on the pleadings under Rule 12(c), including Team Seagraves, Inc. dba RE/MAX Alliance Realty and

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

John Seagraves (Doc. #13); Irongate Realtors, Steve Brown, Coldwell Banker Heritage Realtors, Kal Mughrabi, and Dayton Realtors f/k/a Dayton Area Board of Realtors (Doc. #14); Sage Acquisitions, LLC (Doc. #27); Showtime.com (Doc. #39); and PNC Bank, National Association (Doc. #45).

Washington opposes dismissal and judgment on the pleadings.

**I.**

Plaintiff's Complaint provides some about his personal and family history along with the history of the real-estate market in Dayton, including general allegations of racial discrimination. He alleges, for example, that during the 1950s, "the only properties available for blacks to sell was east of the riverbank, defined by doubles and apartments on land now occupied by Sinclair College, [t]he Courthouse[,] and the County Building." (Doc. #1, *PageID* #3). Also during the 1950s, "blacks had two brokers participating in the REO [Real Estate Owned] industry in Dayton …. Today we have none." *Id.*

For definitional context, several Defendants explain, "REO generally applies to properties that lenders have foreclosed upon and taken ownership of after the conclusion of the foreclosure process." (Doc. #14, *PageID* #72). Once foreclosure ends, lenders list properties for sale with local real estate brokers who then list the properties for sale through the local multiple listing service.

Washington alleges that the Dayton real-estate system worked fairly in the past, but "today,… we have a wild west REO system, controlled by Selected White Realtors, who use the 'Multi Listing System' (MLS) as if it were their private domain…." (Doc. #1, *PageID* #3). He asserts that the Veterans Administration, Housing and Urban

Development, Fannie Mae, and Freddie Mac mandate that any REO participant have access to the MLS system." *Id*.

Washington further states in his Complaint that a "'Culture of Corruption' exists in the local REO industry as all the properties passing thru the Sheriff's sale have been financed through one of the above referenced federal agencies and[/] or insured through the FDIC Banking system. This, in my opinion, surely puts this matter under the Title VII umbrella of the 1964 Civil Rights Act, and subject to investigation by the FBI." *Id*. Washington is "not aware of any Black Realtors who are allowed to participate in the Cincinnati-Dayton REO listing, Management, Rehab or Sales in the REO Sy[s]tem." *Id*. at 4.

According to the Complaint, Washington has "absolute written Proof that HUD's REO subcontractor [Defendant] Sageacq.com committed perjury when they told the Ohio Civil Rights [C]ommission that 'they had not hired any Realtors' since I applied to become on of their REO Realtors." *Id*. He continues:

> It is alleged that some defendant Realtors unscrupulously refuse to process and close loans on Plaintiff's Clients, Demanding that said clients increase their offers on property over and above the asking price[] and possible appraisal values.
>
> It is alleged that Other Defendant Realtors committed fraud by denying me commission payments on Cash sales for unscrupulous reasons, i.e. claiming bad titles on property on my sales contracts, that were sold to others shortly without notice, and without returning to the REO marketplace. We will present the facts with the rest of the "STORY[.]"

*Id*. (capitalization in original).

Washington also refers to the Kerner Commission, created by President Lindon B.

Johnson, "who was disturbed by the Lack of Progress by the effects of his Civil Rights efforts." *Id*. (capitalization in original). He then provides additional information about the Kerner Commission and follow-up work that "has indicated that with each passing year, America becomes more divided and is becoming two societies, One Black and One White, primarily because of Continuing Real Estate principles and practices." *Id.* (capitalization in original).

As to relief, Washington seeks a grant of appropriate commissions and costs "where Defendant Real Estate Brokers ha[ve] unfairly refused to sell properties." *Id*. He further asks for an award of expenses and lost revenue for "any alleged discriminatory abuses that …," *id*., Defendants REO Contractors Vendor Resource Management, Sageacq.com "may have committed against Plaintiff Washington." *Id*. He also seeks an order directing the Dayton Board of Realtors to engage in certain future conduct, which he describes in his Complaint. *Id*. at 5. And he asserts that PNC Bank has not paid him for work he performed at its request and that PNC ignores his bills and correspondences.

In the end, Washington summarizes his Complaint:

> In Dayton, it is alleged that WHITE REO Realtors practice a "wrecking ball housing policy" in black areas. The same "WHITE REALTORS" who get paid to manage white area properties, also get paid to mismanage "Black owned Properties." I wonder why in Dayton "That the Mayor and Commissioners" do[ ] not see a need to declare a "REO CULTURE OF CORRUPTION" AND SEEK FBI AID IN THAT AREA AS IN THE OTHER "CULTURE OF CORRUPTION"?

*Id*. (capitalization in original).

**II.**

The Moving Defendants contend, in part, that Washington's Complaint should be

dismissed, or judgment on the pleadings should be granted, for failure to state a plausible claim for relief under Title VII or otherwise.

Under Rule 12(b)(6), the Court accepts Washington's allegations as true and liberally construes his pro se Complaint in his favor. *See Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). To survive the pending Rule 12(b)(6) motions, Washington's Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The facts cannot make it merely possible that the defendant is liable; they must make it plausible. Bare assertions of legal liability absent some corresponding facts are insufficient to state a claim." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A Rule 12(c) motion for judgment on the pleadings "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991). "The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citations omitted).

Title VII of the Civil Rights Act prohibits employers from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

> Congress gave the EEOC initial enforcement responsibility for employment discrimination claims brought under Title VII. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010). Accordingly, a plaintiff must first file an administrative charge with the EEOC within a certain time that alleges the wrongful conduct. *Id.* "The charge must be 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.' " *Id.* (quoting 29 C.F.R. § 1601.12(b)). A plaintiff must exhaust administrative remedies before filing suit in federal court. *Id.* at 362. To properly exhaust, a plaintiff must: "(1) timely file a charge of employment discrimination with the EEOC; and (2) receive and act upon the EEOC's statutory notice of the right to sue ('right-to-sue letter')." *Granderson v. Univ. of Michigan*, 211 Fed.Appx. 398, 400 (6th Cir. 2006).

*Peeples v. City of Detroit*, 891 F.3d 622, 630 (6th Cir. 2018). "The burden of demonstrating exhaustion lies with the plaintiff." *Dalton v. Franklin County Sheriff's Office*, 2:15cv816, 2015 WL 7017369, at *4 (S.D. Ohio 2015) (Smith, DJ) (citations omitted).

Washington's Complaint does not explain that he filed an EEOC charge, and he has not attached to his Complaint or submitted in the case record, a copy of an EEOC charge he filed with the EEOC concerning the matters discussed in the Complaint. He also has not attached a notice of right to sue from the EEOC in connection with an EEOC charge. And, he has not identified any date upon which he filed an EEOC charge or received a notice of right to sue from the EEOC. Without some indication that he exhausted his administrate remedies and timely filed this case, which the Complaint lacks, Washington's Title VII claims are subject to dismissal. Only after these

procedures have been exhausted, and the plaintiff has obtained a "right to sue" letter from the EEOC, may he or she bring a Title VII action in court. *See Granderson,* 211 F. App'x at 400-01; *see also Hoover v. Timken Co*., 30 F. App'x 511, 513 (6th Cir. 2002).

There is one possible exception to this: Defendant Sageacq.com. Washington alleges that he applied to become one of Sageacq.com's REO realtors. He also says, "Sageacq.com committed perjury when they told the Ohio Civil Rights [C]omission that 'they had not hired any realtors' …." (Doc. #1, *PageID* #4). Accepting this as true, however, the Complaint contains no indication of when he filed a charge of discrimination with the Ohio Civil Rights Commission or the EEOC and no indication that he ever received a notice of right to sue Sageacq.com.

Even if Washington has timely exhausted his administrative remedies, his Title VII claim against the Moving Defendants fall short for failing to raise upon which a reasonable inference can be drawn that any Moving Defendant was Washington's "employer" subject to Title VII's requirements. "Title VII makes it 'an unlawful employment practice for an employer ... to discriminate against any individual…, because of such individual's race, color, religion, sex, or national origin." *Chaney v. Haworth, Inc*., No. 19-1697, 2020 WL 1131511, at *3 (6th Cir. 2020) (quoting, in part, 42 U.S.C. § 2000e-2(a)(1)). Assuming, as one Defendant has conceded, that the Moving Defendants generally satisfy Title VII's definition of employer, *see* Doc. # 14, *PageID* #76, Washington's Complaint contains no indication that he ever was an employee of any Moving Defendant or that any Moving Defendants employed him.

There appears to be one exception to this: Defendant Sageacq.com. Washington

alleges that he applied to become one of Sageacq.com's REO realtors. He says, "Sageacq.com committed perjury when they told the Ohio Civil Rights [C]omission that 'they had not hired any realtors' …." (Doc. #1, *PageID* #4). Accepting this as true, a reasonable inference can be made that Sageacq.com declined to hire Washington, and in light of his allegations of race discrimination in his Complaint, it might well be plausible that he claims Sageacq.com declined to hire him because of his race even though Sageacq.com maintains that it did not hire any realtors at the time. *See id*.; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801 (1973) "What is required by [Title VII] is the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification."). This hiring-discrimination claim becomes clearer in light of additional allegations Washington advances in his Memorandum in Opposition. *See* Doc. #47, *PageID* #234. But, plausible or not, Washington has not alleged any facts indicating that he exhausted his administrative remedies as to a Title VII claim that Sageacq.com discriminated against him by not hiring him based on his race.

Additionally, with the above exception concerning Sageacq.com, the Complaint fails to connect any allegation of discrimination to any of the Moving Defendants. Although Washington is not required to include detailed factual allegations in his Complaint, he must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. At best for Washington, his Complaint raises conclusory and unadorned allegations that fail to state a plausible claim for relief against each Moving Defendant.

Defendant PNC argues that complete diversity of citizenship is lacking over Washington's state-law claims. This is correct. Based on the Complaint's allegations, Washington is a longtime resident of Dayton and a citizen of the State of Ohio. He does not specify the citizenship of each Defendant but the individual Defendant Realtors doubtlessly reside in the Dayton area and are citizens of Ohio. Because complete diversity of citizenship is lacking in this situation, the Court lacks subject matter jurisdiction over Washington's state-law claims. *See Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) ("diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." (emphasis in original)).

Washington contends that the Moving Defendants failed to address his "amended pleadings under the Fourteenth Amendment to the Constitution's Equal Protection Clause …." (Doc. #54, *PageID*#329). This claim, assuming he properly raised—it does not appear on the face of his Complaint—fails as a matter of law. "The constitutional guarantee of equal protection of the laws, however, applies to state laws and statutes—not to internal policies created by private employers." *Stevenson v. Amazon.com, Inc.*, 15-13505-FDS, 2016 WL 2851316, at *4 (D. Mass. 2016); *see* U.S. Const. amend. XIV, § 1 ("No state shall make or enforce any law which shall ... deny to any person within its jurisdiction the equal protection of the laws."); *see also Sarich v. Bank One Corp*, 2005 WL 2233268, at *11 (N.D. Ohio 2005) ("only a governmental entity, and not a private employer such as Bank One, may violate an individual's rights to equal protection under those provisions.").

Washington contends that the Moving Defendants failed to address his claims

under the Fair Housing Act of 1968, the Civil Rights Act of 1968, and the Sherman Antitrust Act, Section 2. Neither of these claims appear upon a liberal construction of Washington's Complaint and when accepting its allegations as true. The Complaint wholly lacks any reference to these federal statutes and its allegations at best for Washington raise conclusory and unadorned matters that fail to raise plausible statutory claims.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Motions To Dismiss filed by Defendant Team Seagraves, Inc. dba RE/MAX Alliance Realty and John Seagraves (Doc. #13); Irongate Realtors, Steve Brown, Coldwell Banker Heritage Realtors, Kal Mughrabi, and Dayton Realtors f/k/a Dayton Area Board of Realtors (Doc. #14); Sage Acquisitions, LLC (Doc. #27); and PNC Bank, National Association (Doc. #45) be GRANTED and Plaintiff's claims against these Defendants be dismissed pursuant to Fed. R. Civ. P. 12(b)(6);

2. Showtime.com's Motion for Judgment on The Pleadings (Doc. #39) be GRANTED and Plaintiff's claims against Showtime.com be dismissed pursuant to Fed. R. Civ. P12(c); and

3. Plaintiff's state-law claims be DISMISSED under Fed. R. Civ. P. 12(b)(1).

April 2, 2020

*s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).